UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MELISSA STAMPF,

                              Plaintiff,

                -against-

THE LONG ISLAND RAILROAD AUTHORITY,
METROPOLITAN TRANSPORTATION
AUTHORITY, JAMES SOKIRA, and ANGELA
TRIGG,

                              Defendants.
----------------------------------------------------------X

Memorandum
& Order
CV-07-3349 (SMG)

GOLD, S., *United States Magistrate Judge*:

       Plaintiff brings this action asserting claims under the Federal Employers Liability Act

("FELA"), 45 U.S.C. § 51, and 42 U.S.C. § 1983 and pursuant to state, city and common law.

Defendants have moved for summary judgment, and plaintiff has cross-moved, seeking entry of

a default judgment against defendant Sokira, vacatur of an arbitration decision imposing

discipline on her, and leave to amend if the court finds any causes of action in her complaint

deficient.[1]  For the reasons that follow, defendants' motion is granted in part and denied in part

and plaintiff's motion is denied in its entirety.

## Facts[2]

       Plaintiff, Melissa Stampf, began working for the Long Island Rail Road ("LIRR") in

1992.  Def. R.56.1 ¶ 1.  Since 1995, she has worked as a locomotive engineer. *Id.* ¶ 2.

       Plaintiff's primary claims are that she was falsely arrested and maliciously prosecuted.

---

[1] The parties have consented to my exercise of jurisdiction over this action pursuant to 28 U.S.C. § 636(c).  Docket Entry 39.

[2] The facts are construed in the light most favorable to Stampf, the non-moving party, and they are derived from the parties' Local Rule 56.1 statements and supporting exhibits.  "Def. R.56.1" refers to Defendant's R.56.1 Statement, Docket Entry 44-1.  Plaintiff was ordered to amend her 56.1 Statement due to several deficiencies.  *See* Order dated Dec. 30, 2009, Docket Entry 57.  "Pl. R.56.1" and Pl. R.56.1 Counterstatement" refer to plaintiff's revised Counterstatement of Fact, Docket Entry 60.

Plaintiff was arrested on August 3, 2006, based on events that took place approximately four weeks earlier. It is undisputed that, on July 10, 2006, Angela Trigg, a fellow LIRR employee, complained to a supervisor, Rod Brooks, that Stampf had inappropriately touched Trigg's breast. *Id*. ¶ 4; *see also* Pl. R.56.1 ¶ 4. It is also undisputed that Stampf in fact touched Trigg on July 9, 2006. *See* LIRR Statement of Facts, Docket Entry 44-11 at 19-29. The type of touch, however, is hotly contested. According to Trigg, Stampf grabbed and shook Trigg's breast. *See* MTAPD Incident Report, Docket Entry 44-11 at 38; LIRR Statement of Facts, Docket Entry 44-11 at 20 (transcript of interview between Scott Petraglia, Trial Officer, and Angela Trigg). Stampf denies touching Trigg's breast and contends that she touched Trigg only on her shoulder. *See* LIRR Statement of Facts, Docket Entry 44-11 at 23-25 (transcript of interview between Scott Petraglia and Melissa Stampf); Stampf Dep. at 37-43, Docket Entry 56-19.

The LIRR conducted an investigation into Trigg's allegations. Def. R.56.1 ¶¶ 5-8; *see also* LIRR Statement of Facts, Docket Entry 44-11 at 18-30 (transcript of interviews by Scott Petraglia, Trial Officer). On July 12, 2006, after concluding that Stampf's actions violated its rules, the LIRR suspended Stampf for twenty days as a penalty for Conduct Unbecoming an Employee. Def. R.56.1 ¶ 10; *see also* Docket Entry 56-24. Stampf's union grieved the disciplinary charge on her behalf. An arbitration panel found that Stampf had improperly touched Trigg's breast, but reduced her suspension from twenty to ten days. Docket Entry 56-22 at 3.

It is also undisputed that on August 1, 2006, Trigg reported to the MTA police that Stampf had "grabbed [her] left breast and shook it" in July. Docket Entry 44-11 at 38; *see also* Def. R.56.1 ¶ 17. The MTA police filed an incident report accompanied by Trigg's written statement, signed under penalty of perjury. Docket Entry 44-11 at 38; Docket Entry 56-3. On

2

August 3, 2006, Trigg informed MTA Police Officer James Sokira that she had filed a complaint against a co-worker who was currently in the West Side Yard.  Def. R.56.1 ¶ 19.  Officer Sokira contacted the desk officer who read the incident report to him.  *Id.* ¶ 20.  MTA Police Lieutenant Pedoty then instructed Sokira to place Stampf under arrest.  *Id.*  Stampf was handcuffed and charged with forcible touching and sexual abuse.  MTAPD Incident Report, Docket Entry 44-11 at 39.  The Manhattan District Attorney ultimately declined to prosecute.  Docket Entry 56-1.

      In addition to her false arrest and malicious prosecution claims, Stampf alleges that she was subjected to discrimination because the disciplinary sanction imposed on her was harsher than the discipline imposed on two white, heterosexual males accused of similar inappropriate sexual conduct involving Trigg.  As noted above, Stampf – who is female, homosexual and Asian – received a ten-day suspension for her conduct.  Prior to her incident with Stampf, Trigg accused two male coworkers of inappropriate sexual conduct.  In August, 2005, Trigg accused Matt Schrader of touching her buttocks.  Pl. R.56.1 Counterstatement ¶ 90.  Schrader signed a LIRR form called a "Trial Waiver and Last Chance Agreement" and received a five-day suspension for engaging in "Conduct Unbecoming" by violating the LIRR's anti-harassment policy.  *Id.* ¶¶ 99, 101, 102; *see also* Docket Entry 44-11 at 34-35.  In April, 2006, Trigg accused Gerard DiCecco of making inappropriate comments about her breasts.  Pl. R.56.1 Counterstatement ¶ 105.  DiCecco also signed a trial waiver and last chance agreement and received a five-day suspension for Conduct Unbecoming.  *Id.* ¶¶ 114, 116, 117.  Stampf asserts that she was not offered a trial waiver and last chance agreement by the LIRR, and that she was taken out of service without pay while the investigation into her conduct was pending, whereas Schrader and DiCecco were not.  *Id.* ¶¶ 103-04, 118-19, 128-29.

**Discussion**

*A.  Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c).  An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991).  In reaching a summary judgment determination, the court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).  The moving party bears the initial burden of establishing that there are no genuine issues of material fact; once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).  Mere conclusory allegations, however, are insufficient and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

*B.  False Arrest*

I begin my analysis with plaintiff's false arrest claim because at least three of the causes of action set forth in her amended complaint – a FELA claim for emotional damages based on the arrest, a § 1983 claim for false arrest, and a common law claim for false arrest – hinge on whether Stampf's arrest by Sokira was lawful.  Am. Compl. ¶¶ 17-28, 36-44, 46-49.

Probable cause is a complete defense to a claim of false arrest, whether the claim is brought pursuant to § 1983 or state law. *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir.

2002); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Zanghi v. Inc. Vill. of Old Brookville*,

752 F.2d 42, 45 (2d Cir. 1985).  The question of probable cause is an objective one – "whether a

reasonable officer could conclude that the circumstances . . . established the necessary probable

cause."  *Caldarola*, 298 F.3d at 161.

     Probable cause exists "when the officers have knowledge or reasonably trustworthy

information of facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that the person to be arrested has committed or is committing a crime."

*Weyant*, 101 F.3d at 852.  A statement by a victim, particularly one who has signed a complaint

charging someone with a crime, is sufficient to establish probable cause "absent circumstances

that raise doubts as to the victim's veracity."  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119

(2d Cir. 1995).  Thus, "it is well-established that a law enforcement official has probable cause to

arrest if he received his information from some person, normally the putative victim or

eyewitness."  *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  Indeed, "[t]he veracity of

citizen complainants who are the victims of the very crime they report to the police is assumed."

*Stokes v. City of New* York, 2007 WL 1300983 at *5 (E.D.N.Y. May 3, 2007) (quoting

*Miloslavsky v. AES Engineering Soc., Inc.,* 808 F. Supp. 351, 355 (S.D.N.Y. 1992)).

     In this case, Trigg made a written statement, signed under penalty of perjury, accusing

Stampf of touching her inappropriately.  *See* Docket Entry 56-3.  Trigg's signed statement and

subsequent personal report of the allegations to Sokira were sufficient to lead a reasonable police

officer to conclude that there was probable cause for Stampf's arrest.  *See*, *e.g.*, *Dion v. City of*

*Utica, N.Y.*, 2005 WL 1174065, at *5 (N.D.N.Y. May 10, 2005) (finding probable cause based

on victim's sworn statement and, relying on some of the cases cited above, rejecting the

argument that making an arrest based upon an allegation of a single witness and without

conducting further investigation is unconstitutional).  Here, Sokira, the "arresting officer[, was] advised of a crime by a person who claims to be the victim, and [the victim, Trigg] signed a complaint or information charging [Stampf] with the crime, [and thus there was] probable cause to effect an arrest."  *Singer*, 63 F.3d at 119.

The presumption that a victim's statement is sufficiently reliable to establish probable cause may be rebutted where there are circumstances that raise questions about the victim's veracity.  Plaintiff contends that differences in two handwritten statements Trigg provided to the police – the first statement given on August 1, 2006 at the time Trigg first reported the incident to the police and the second given on August 3, 2006 when Stampf was arrested – should have caused the police to question Trigg's veracity.  Pl. Mem. 30; Pl. R. 56.1 Counterstatement ¶ 174.[3]  Trigg's second statement, however, was given *after* plaintiff's arrest.  *See* Docket Entry 56-4 (noting the time of the statement as 12:15); Docket Entry 44-11 at 39 (noting the time of Stampf's arrest as 12:05).  Accordingly, any discrepancy between Trigg's two accounts of the relevant events could not have been known at the time of Stampf's arrest, the critical point in time for determining probable cause.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (noting that, in determining whether an officer had probable cause to make an arrest, courts "consider the facts available to the officer at the time of arrest," and that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"); *Bourguignon v. Guinta*, 247 F. Supp. 2d 189, 193 (D. Conn. 2003) (noting that the police may rely on victim or witness statements to determine probable cause, "regardless of the ultimate accurateness or truthfulness of the statements"); *Fazzino v. Chiu*, 771 F. Supp. 518, 521 (D.

---

[3] "Pl. Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Various Cross-Motion [sic], Docket Entry 49.

Conn. 1991) ("[F]urther investigation might have proven the victim's story to be subject to question . . . .  Probable cause is, however, determined at the time of the arrest.").  In any event, I discern no material differences between the two statements.  *Compare* Docket Entry 56-3 ("Melissa reached her hand in my car window and grabbed by left breast and shook it.") *with* Docket Entry 56-4 ("Melissa reaches in the window and grabs my left breast and giggles.").  Thus, even if Trigg had provided her second statement before rather than after Stampf's arrest, it would not have raised a question about her veracity.

Plaintiff also argues that Trigg's failure to report the incident to the police until almost one month after it occurred should have led the police to question Trigg's veracity.  Pl. Mem. 30.  As noted in her August 1st police statement, however, Trigg did report the incident immediately to her employer.  Docket Entry 56-3.  Moreover, she reported the incident to the police on her first or second day after returning to work after the incident.  *Id*.  Finally, Trigg explains in her statement that she consulted with an attorney before making a police report.  *Id*.  Thus, Trigg's delay in reporting the incident to the police was sufficiently explained and would not have raised a question about her veracity in the mind of a reasonable police officer.  *See, e.g.*, *Torino v. Rieppel*, 2009 WL 3259429, at *6 (E.D.N.Y. Oct. 8, 2009) ("[T]he mere passage of a significant period of time between a crime and the report to the police does not necessarily raise questions about the veracity of the victim, especially if a credible reason for the delay is given."); *Cornett v. Brown*, 2006 WL 845568, at *9 (E.D.N.Y. Mar. 30, 2006) (finding probable cause where police officer relied on information from victim-complainant about crime committed several months prior).

Plaintiff's remaining arguments about facts that should have raised doubts as to Trigg's veracity are vague and unpersuasive.  Pl. Mem. 30.  For all the above reasons, it is clear from the

undisputed facts that there was probable cause to support Stampf's arrest.  Accordingly,

defendants are granted summary judgment on plaintiff's first, second, fourth, and fifth causes of

action, to the extent they are based on a claim of false arrest.

## C.  Plaintiff's Claims Under the Federal Employers Liability Act (FELA)

Plaintiff brings three claims under FELA.[4]  Her first, asserted against the LIRR, is based

on various tortious acts that she alleges occurred in the workplace, including "continuous and

ongoing forms of sexual harassment, harassment, verbal abuse, false allegations

of sexual harassment and/or sexual assault, a hostile work environment, inappropriate

disciplinary charges and wrongful criminal charges."  Am. Compl. ¶ 6; see also Tr. at 4-6.

Initially, I understood plaintiff's second cause of action to be a FELA claim more specifically

based on her arrest and prosecution, and her first cause of action to be focused on other incidents

that occurred at her workplace.  At oral argument, however, plaintiff's counsel described the

second cause of action as identical to the first, but directed at the MTA rather than the LIRR.  Tr.

at 4-6.  Although this seems to be inconsistent with the plain language of plaintiff's complaint,

see Am. Compl. p. 5 (stating "As and for a second cause of action against the MTA & LIRR"), I

nonetheless accept counsel's construction for purposes of the pending motions and consider the

second cause as a FELA claim identical to the first cause of action but asserted against the MTA

rather than the LIRR.  I originally understood plaintiff's third cause of action to be a § 1983

claim alleging due process and equal protection violations.  At oral argument, though, citing

paragraph thirty-two of the amended complaint, plaintiff's counsel clarified that this cause of

---

[4] The court has had, and continues to have, difficulty discerning the bases for the various causes of action pled in plaintiff's amended complaint.  At oral argument, I asked plaintiff's counsel to articulate the basis for each of plaintiff's nine causes of action.  Tr. of Oral Arg. of Mar. 17, 2010 ("Tr.") at 3, Docket Entry 65.  After re-reading the amended complaint during the argument, counsel articulated what he believed to be the basis for each cause of action, although he could not recall with precision what his intentions were when he drafted the complaint.  Id. at 4-21.  Counsel's statements at oral argument, moreover, differ in some material respects from the amended complaint itself and the contentions in plaintiff's motion papers with respect to some of the causes of action pled.

action is also brought as a FELA claim, but is distinct from plaintiff's first and second causes of action because it is based on constitutional torts committed during the administrative disciplinary proceedings instituted by the LIRR against plaintiff.  Tr. at 15-16.

### 1.  FELA's "Physical Impact" Requirement

FELA was enacted in 1908 to provide a federal remedy for injuries caused by the "physical dangers of railroading that resulted in the death or maiming of thousands of workers every year."  *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994).  FELA provides that "every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."  45 U.S.C. § 51.  Although primarily intended to remedy railroading accidents, FELA has been liberally construed to permit injured railroad employees to recover for any work-related injury.  *Gottshall*, 512 U.S. at 543.

To further FELA's remedial purpose, "the Second Circuit has placed a particularly heavy burden on parties seeking summary judgment on FELA claims."  *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 514 (S.D.N.Y. 2000).  Thus, "[u]nder the FELA, 'the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff.'"  *Gadsden v. Port Auth. Trans-Hudson Corp.*, 140 F.3d 207, 209 (2d Cir. 1998) (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 828 (2d Cir. 1994)).

Also in light of its broad remedial purpose, FELA has been extended to cover intentional torts, even though it speaks only of an employer's liability for negligence, *Higgins v. Metro-North R.R. Co.*, 318 F.3d 422, 425 (2d Cir. 2003), and to provide compensation for non-physical

injuries, *Gottshall*, 512 U.S. at 547-48.  The Supreme Court has limited the right to recover

under FELA for emotional damages, however, to those railroad employees "who sustain a

physical impact as a result of a defendant's negligent conduct, or who are placed in immediate

risk of physical harm by that conduct." *Gottshall*, 512 U.S. at 547-48.  In other words, to recover

for purely emotional injuries under FELA, a plaintiff must be within the "zone of danger" of an

actual or threatened physical harm. *Id*. at 554-55.  *See also Norfolk & Western Ry. Co. v. Ayers*,

538 U.S. 135, 147 (2003) (noting that recovery for "[s]tand-alone emotional distress claims not

provoked by any physical injury . . . is sharply circumscribed by the zone-of-danger test").

The Supreme Court further narrowed the class of plaintiffs entitled to pursue remedies

under FELA in *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424 (1997).  In *Buckley*,

the Supreme Court, reasoning that "the words 'physical impact' do not encompass every form of

'physical contact,'" held that inhaling carcinogenic insulation dust was not a sufficient "physical

impact" to support a FELA claim for emotional distress over future risk of disease.  521 U.S. at

432.  Subsequently, the Second Circuit clarified that "*Buckley* thus restated the traditional rule

that an event cannot constitute a physical impact, even if it entails contact, unless it has a

physically harmful effect on the body." *Nelson v. Metro-North Commuter R.R.*, 235 F.3d 101,

110 (2d Cir. 2000).  Moreover, in order to be within the *Gottshall* zone of danger if there has

been no physical injury or contact, "the risk of physical harm to the plaintiff must be, at the very

least, more than minimal." *Nelson*, 235 F.3d at 113.

### 2.  *Plaintiff's FELA Claim Based on her Arrest*

Although her first cause of action appears to be based on non-physical harassment, *see*

Am. Compl. ¶ 6; Tr. 4-6, plaintiff's motion papers suggest that this FELA claim is based on her

arrest, *see* Pl. Mem. 7, 10, 12, 25; *see also* Am. Compl. ¶¶ 24-26.  As discussed above, however,

10

plaintiff's arrest was based on probable cause and therefore lawful.  Accordingly, the arrest

cannot provide the basis for a FELA claim.

 Even if Stampf could establish that her arrest was unlawful, her FELA claim would fail

because a FELA claim may not be based on an allegation of false arrest.  *See McSorley v.*

*Consol. Rail Corp.*, 581 F. Supp. 642 (S.D.N.Y. 1984) (holding that false arrest and malicious

prosecution claims are not actionable under FELA); *Brady v. Penn Central Transp. Co.*, 406 F.

Supp. 1239 (S.D.N.Y. 1975); *see also Forgione v. U.S.*, 202 F.2d 249, 251 (3d Cir. 1953)

(holding that no cause of action for false arrest exists under the Jones Act, 46 U.S.C. § 688, an

analogous federal statute that provides a right of action for seamen suing their employers for

negligence and uses the same relaxed standard of negligence as FELA); *Richards v. Royal*

*Caribbean Cruises LTD.*, 118 F. Supp. 2d 150 (D.P.R. 1999) (same); *Couser v. Consol. Rail*

*Corp.*, 1986 WL 11199 (S.D.N.Y. Sept. 29, 1986); *but see Slaughter v. Atlantic Coast Line R.R.*

*Co.*, 302 F.2d 912 (D.C. Cir. 1962) (holding that a false arrest claim is actionable under FELA).

Although a plaintiff could theoretically base a FELA claim upon allegations that a police officer

used excessive force when placing her under arrest, Stampf does not allege that she was

subjected to any force other than handcuffing, and does not contend that her handcuffing resulted

in a significant injury.  The use of handcuffs, without more, has been held insufficient to

establish excessive force.  *See Grant v. City of New York*, 500 F. Supp. 2d 211, 217 (S.D.N.Y.

2007) (holding that "[t]he right to make an arrest accompanies with it the right to use some

degree of physical coercion," including handcuffing); *Cornett v. Brown*, 2006 WL 845568, at

*16 (E.D.N.Y. Mar. 30, 2006); *Marrero v. City of New York*, 33 A.D.3d 556, 557 (1st Dep't

2006).

 For all these reasons, to the extent plaintiff's FELA claims are based on her arrest, they

11

must be dismissed.

### 3.  Plaintiff's Cause of Action Under FELA for Harassment

As noted above, plaintiff's first cause of action appears to seek recovery for emotional injuries resulting from "continuous and ongoing forms of sexual harassment, harassment, verbal abuse, false allegations of sexual harassment and/or sexual assault, a hostile work environment, inappropriate disciplinary charges and wrongful criminal charges."  Am. Compl. ¶ 6; see also Tr. at 4-6.  It is not clear whether this cause of action is based on a theory of negligent or intentional infliction of emotional distress.  In either case, though, plaintiff's claim fails because she does not plead or present evidence of any physical impact or immediate risk of physical harm.

Other than her arrest, which as discussed above may not form the basis of a claim under FELA, plaintiff fails to allege any physical impact that could give rise a FELA claim.  Rather, Stampf alleges only that she was verbally harassed and subjected to a suspension without pay that was improperly imposed.[5]  See Wahlstrom, 89 F. Supp. 2d at 516 (noting that "courts have consistently dismissed FELA claims where the plaintiff fails to allege that the harassment to which he or she was subjected included at least some sort of physical contact or threat of imminent physical harm" and collecting cases).  Because Stampf was never at risk of physical harm as a result of the defendants' conduct alleged in her first cause of action, see Am. Compl. ¶ 6, she has failed to establish the requirements of a FELA claim for emotional injuries.  Nelson, 235 F.3d at 110-11 ("[I]f defendant's conduct creates no risk of physical harm whatsoever, the Gottshall requirement cannot be met.").  Moreover, to the extent her claim is based on "inappropriate disciplinary charges," Am. Compl. ¶ 6, at least three courts in this Circuit have specifically held that a plaintiff may not recover under FELA for emotional injuries caused by an

---

[5] In her opposition to the summary judgment motion, plaintiff does not identify any specific incidents of harassment, any facts suggesting a hostile work environment, or any assaults or batteries by her coworkers.  See Pl. R.56.1 Counterstatement.

employer's disciplinary actions.  *See*, *e.g.*, *Gallimore-Wright v. Long Island R.R. Co.*, 354 F.

Supp. 2d 478, 486 (S.D.N.Y. 2005); *Cohen v. Metro-North Commuter R.R.*, 1991 WL 4699, at

*3-4 (S.D.N.Y.  Jan. 11, 1991); *Feldleit v. Long Island R.R.*, 723 F. Supp. 892, 900-01 (E.D.N.Y.

1989) (finding that FELA was not intended to hold "employers who in good faith comply with

the national policy aimed at eradicating employment discrimination against women" liable "for

tort damages for the emotional distress suffered by a worker accused of sexual harassment by a

fellow employee," even when the accusation turns out to be false).  *See also Milam v. Herrlin*,

819 F. Supp. 295, 302-03 (S.D.N.Y. 1993) (finding that plaintiff failed to establish a FELA claim

based on alleged negligence in a urinalysis test).[6]

Although FELA is liberally construed to grant employees the broadest recovery possible,

it does not provide a remedy for every "work-stress-related claim."  *Gottshall*, 512 U.S. at 558.

Because FELA is primarily concerned with the physical dangers encountered by railroad

employees, *see Gottshall*, 512 U.S. at 542, and for all of the reasons stated above, summary

judgment is granted in favor of defendants on the first cause of action.

### 4.  *Plaintiff's Second Cause of Action*

It is not clear from the language of the amended complaint how plaintiff's second cause

of action differs from her first.  As noted above, however, plaintiff's counsel explained during

oral argument that plaintiff's first and second causes of action are based upon the same conduct,

---

[6] Courts have dismissed FELA claims for emotional injuries predicated on disciplinary proceedings for two reasons. First, an employer disciplinary action does not ordinarily involve a physical impact which, as discussed in the text above, is a prerequisite for recovery under FELA.  *See*, *e.g.*, *Milam,* 819 F. Supp. at 302.  Second, at least to the extent the claim is based on a theory of intentional infliction of emotional distress, courts have held that dismissal is proper because an employer's disciplinary conduct rarely meets the common law requirements of extreme and outrageous conduct.  *Hagerman v. Metro-North Commuter R.R.*, 1995 WL 614562, at *2 (S.D.N.Y. Oct. 19, 1995) (noting that a plaintiff must establish "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community") (internal quotation marks omitted).  *See also Higgins*, 318 F.3d at 426 (holding that plaintiff's four alleged incidents of verbal sexual harassment "do not approach the 'extreme and outrageous' conduct required to prove intentional infliction of emotional distress"); *Visconti v. Consol. Rail Corp.*, 801 F. Supp. 1200, 1207-08 (S.D.N.Y. 1992); *Milam*, 819 F. Supp. at 303; *Cohen*, 1991 WL 4699, at *3; *Feldleit*, 723 F. Supp. at 899.

and that the difference is that the first cause of action is brought against the LIRR and the second against the MTA.  Defendants are therefore entitled to summary judgment on plaintiff's second cause of action for the reasons discussed above.

Plaintiff's second cause of action fails for an additional reason.  FELA permits recovery by an employee injured as a result of the negligence of her employer.  Stampf's employer is the LIRR.  The LIRR is a subsidiary of the MTA.  *Greene v. Long Island R.R. Co.*, 99 F. Supp. 2d 268, 270 (E.D.N.Y. 2000).  Pursuant to New York statute, however, employees of any subsidiary of the MTA, such as the LIRR, are not employees of the MTA.  N.Y. PUB. AUTH. L. § 1266(5) ("The employees of any such subsidiary corporation, except those who are also employees of the authority, shall not be deemed employees of the authority.").  Thus, the MTA is not Stampf's employer and is not a proper defendant in any FELA claim brought by Stampf.  Accordingly, plaintiff's second cause of action – assuming, as plaintiff's counsel stated at oral argument, it is lodged only against defendant MTA – must be dismissed for this reason as well.

### 5.  *Plaintiff's Constitutional FELA Claim*

Finally, plaintiff brings a FELA claim based upon alleged constitutional torts.  More specifically, plaintiff seeks to impose liability under FELA for due process and equal protection violations that she contends occurred during her disciplinary proceedings.  Tr. at 15-16.  For the same reasons that her first cause of action under FELA fails, so too must this one.  Assuming for purposes of argument that Stampf's constitutional rights were violated by the manner in which the disciplinary proceedings leading to her suspension were conducted, the violations did not cause plaintiff to suffer an actual physical injury or impose a substantial risk of physical injury, and therefore do not provide a proper basis for recovery under FELA.  *Gottshall*, 512 U.S. at

14

547-48; *Nelson*, 235 F.3d at 110-11.  Accordingly, plaintiff's third cause of action, a FELA claim alleging constitutional violations, must be dismissed.

*D.  Section 1983*

Plaintiff's fourth cause of action is brought against all defendants pursuant to § 1983 and is based on her arrest and prosecution.  Am. Compl. ¶¶ 36-49.  As discussed above, the undisputed facts demonstrate that Stampf's arrest was lawful and supported by probable cause. Accordingly, and for that reason, her fourth cause of action based on false arrest must be dismissed with respect to all defendants other than Trigg.

Plaintiff's § 1983 claim against the MTA and the LIRR fails not only because her arrest was lawful, but also because a plaintiff seeking to impose Section 1983 liability against an entity must establish that the entity had an official custom or policy that deprived plaintiff of her constitutional rights.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978); *Williams*, 2006 WL 2668211, at *26.  Stampf has failed even to allege in her pleading, much less present evidence of, any LIRR policy or custom that violated her constitutional rights.  *See* Am. Compl. ¶¶ 30-49.

In her opposition to defendants' summary judgment motion, plaintiff argues that it is the MTA's custom and policy to require that an officer follow his superior's order to arrest an individual.  Plaintiff contends that this practice suffices to support a claim of municipal liability, and relies on *Lauro v. City of New York*, 39 F. Supp. 2d 351, 367 (S.D.N.Y. 1999) (holding city liable under § 1983 for its "perp walk" policy); *rev'd on other grounds*, 219 F.3d 202 (2d Cir. 2000).  Pl. Mem. 29-31 (citing *Lauro* as "[f]inding that where a police officer acts pursuant to the directives of his superior officer, a *Monell* policy claim is properly stated"); *see also* Tr. at 46-48. *Lauro*, however, does not support plaintiff's contention.  In *Lauro*, the court found that plaintiff

15

had established a *Monell* claim "by showing facts that tend[ed] to circumstantially support . . . an inference" that the City of New York condoned the *use of "perp walks*." 39 F. Supp. 2d at 367. Before finding that the custom and policy was actionable under *Monell*, though, the court first found that the "perp walk" constituted a violation of the plaintiff's Fourth Amendment rights. 39 F. Supp. 2d at 363. Here, plaintiff attempts to base her *Monell* claim on the straightforward and unobjectionable police policy of requiring that an officer follow a superior officer's directive. Pl. Mem. 29-31; Tr. at 46-48. This is insufficient to establish a *Monell* claim because it fails to allege a practice or policy that violates the Constitution or federal law. Accordingly, the third cause of action against the MTA and the LIRR must be dismissed on this ground as well. *See*, *e.g.*, *Lewis v. City of New York*, 2009 WL 935955, at *4-5 (E.D.N.Y. Mar. 31, 2009) (dismissing plaintiff's § 1983 claims where plaintiff failed to allege any custom or policy that led to the alleged constitutional violations); *Azon v. Metro. Transp. Auth.*, 2002 WL 959563, at *6 (S.D.N.Y. May 9, 2002) (granting defendants summary judgment on plaintiffs' § 1983 claims where plaintiffs failed to identify any unconstitutional custom or policy).

Plaintiff's § 1983 claim against Trigg fails because individuals may be held liable under § 1983 only if they committed the actions complained of under color of state law; a plaintiff seeking to establish liability under § 1983 must prove that a person or entity, acting under color of state law, deprived her of the rights, privileges, or immunities guaranteed by the United States Constitution or by federal law. *McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir. 1990).

"[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49-50 (1988). In this case, Trigg was not exercising any official responsibilities when she accused Stampf of grabbing and shaking her breast; rather, Trigg was acting in her personal

16

capacity.  *See*, *e.g.*, *Brown v. New York State Dep't of Correctional Servs.*, 583 F. Supp. 2d 404, 412 (W.D.N.Y. 2008) ("Harassment by a state employee's coworkers . . . typically will not satisfy the state action requirement."); *Williams v. City of New York*, 2006 WL 2668211, at *27 (E.D.N.Y. Sept. 11, 2006) (noting that "where the harassment in question does not involve use of state authority or position, the harasser is generally found not to be acting under color of state law"). This cause of action must therefore be dismissed against Trigg as well.

E.  *Common Law and State and City Law Claims*

Plaintiff also brings claims pursuant to common law and state and city human rights laws, and alleges diversity jurisdiction.[7]  These claims include 1) false arrest and malicious prosecution, 2) negligent and intentional infliction of emotional distress, and 3) discrimination in violation of New York state and city laws.

1.  *False Arrest and Malicious Prosecution*

Plaintiff concedes that her state law false arrest claims against the MTA, Officer Sokira, and Trigg should be dismissed as untimely  Pl. Mem. 31.  Moreover, as under federal law, probable cause is a complete defense to a claim of false arrest under state law.  *Arzeno v. Mack*, 39 A.D.3d 341 (1st Dep't 2007).  Because Officer Sokira had probable cause to arrest Stampf, plaintiff cannot sustain a claim for false arrest under state law against the LIRR, the only remaining defendant.  Thus, defendants' motion for summary judgment on this claim is granted.

Plaintiff also asserts a claim for malicious prosecution against all defendants.  Under New York law, a plaintiff alleging malicious prosecution must establish: "(1) that the defendant

---

[7] Defendants originally stated that this court had *pendent* jurisdiction over these claims and requested that I decline to exercise such jurisdiction.  Def. Mem. 16.  Plaintiff also requested that I refrain from adjudicating her state law claims if all her federal claims were dismissed.  Pl. Mem. 31.  While it may have been appropriate for me to decline to exercise pendent jurisdiction, I have no such discretion when this court's jurisdiction of these claims is based on diversity.  Accordingly, I address the merits of these claims.

commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  As with a false arrest claim, probable cause is a complete defense to a malicious prosecution claim.  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).  Plaintiff's malicious prosecution claim against all defendants other than Trigg is subject to dismissal on this basis alone.

Moreover, to make out her malicious prosecution claim, plaintiff must first establish that these defendants – the LIRR, the MTA, Trigg and Sokira – were responsible for commencing or continuing the criminal proceedings against her.  *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000).  Plaintiff has not presented any evidence indicating that defendants Sokira, the MTA, or the LIRR did anything to initiate or continue the proceedings against Stampf in any way.  In particular, Officer Sokira's arrest of Stampf, without more, is insufficient to establish a claim of malicious prosecution against him.  *See Johnson v. City of New York*, 2008 WL 4450270, at *12 (S.D.N.Y. Sept. 29, 2008); *Smith v. City of New York*, 388 F. Supp. 2d 179, 186 (S.D.N.Y. 2005).  Plaintiff has failed to establish, let alone allege, any role in Stampf's prosecution by the MTA or the LIRR sufficient to hold them liable for malicious prosecution. *See* Pl. Mem. 31-33.  Moreover, as noted earlier, because Trigg acted in her personal capacity when she filed the police report accusing plaintiff, the LIRR may not be held liable on a respondeat superior theory.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (noting that "an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business").  Accordingly, defendants Sokira, the

MTA, and the LIRR are entitled to summary judgment on plaintiff's malicious prosecution claim.

Plaintiff does, however, raise a triable issue of fact with respect to whether Trigg "initiated" criminal proceedings against Stampf by accusing Stampf of grabbing her breast. Generally, "the mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* (citing *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696 (2d Dep't 1992). Nonetheless, an individual who provides false information to the police or prosecutor may be held liable for malicious prosecution. *See Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999); *Maskantz v. Hayes*, 39 A.D.3d 211, 213 (1st Dep't 2007).[8] Plaintiff, who was of course herself a witness to the underlying facts, testified at her deposition that Trigg's accusation was false. Stampf Dep. at 37-43, Docket Entry 56-19. In addition, plaintiff has submitted the affidavits of five coworkers who provide information that at least arguably calls the veracity of Trigg's accusations into question. *See* Docket Entry 56-48 (witness statements).

Plaintiff has presented evidence to establish the other elements of a malicious prosecution claim as well. First, plaintiff's criminal case was terminated in a manner favorable to her. "A criminal proceeding terminates favorably to the accused, for purposes of a malicious prosecution claim, when the final disposition of the proceeding involves the merits and indicates the accused's innocence." *MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (1996). Courts have found this

---

[8] Defendants contend that even an individual who makes a false report to the police may not be held liable for malicious prosecution, relying in this regard on *DuChateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 131 (1st Dep't 1999). Def. Mem. 18; Tr. at 28. In *DuChateau*, however, there was no allegation that the defendant falsely reported a crime to the police. 253 A.D.2d at 132 ("There is no evidence that [the defendant] gave false information or withheld information from [the police officer]. Thus, as a matter of law, plaintiff has failed to show that [defendant] initiated the prosecution.").

element met where a prosecution was dismissed because there was insufficient evidence to support the charge. *See Slatkin v. Lancer Litho Packaging Corp.*, 33 A.D.3d 421, 422 (1st Dep't 2006); *Verboys v. Town of Ramapo*, 12 A.D.3d 665, 666 (2d Dep't 2004). *See also Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) (noting that favorable termination means a "final disposition . . . such as to indicate the innocence of the accused"); *Rivas v. Suffolk County*, 326 F. Supp. 2d 355, 363 (E.D.N.Y. 2004) ("An affirmative demonstration of innocence is not required. What is required is a showing that the basis for dismissal was not inconsistent with innocence."). In Stampf's case, the District Attorney declined further prosecution of the criminal proceedings against her and stated: "Following a review of the evidence and interviews with several witnesses, including the complaining witness, the People conclude that the case cannot be proven beyond a reasonable doubt." Docket Entry 56-1. This is a decision on the merits that supports an inference of innocence. Accordingly, plaintiff has raised a triable issue on the second element.

Because plaintiff has raised a triable issue with respect to the falsity of Trigg's criminal allegation, Stampf also satisfies the third and fourth elements of a malicious prosecution claim: that there was no probable cause and that the defendant acted with malice. Although it was reasonable for the police to rely on Trigg's statement to conclude that there was probable cause to arrest Stampf, the question arises whether Trigg had a legitimate basis to file the police report. "A lack of probable cause can be shown by evidence that the defendants . . . have misrepresented or falsified evidence . . . or otherwise acted in bad faith." *Capanelli v. NYP Holdings, Inc.*, 2009 WL 249358, at *9 (S.D.N.Y. Jan. 30, 2009) (internal quotation marks omitted). Drawing all reasonable inferences in favor of plaintiff, the evidence suggests that Trigg may have falsely reported to the police that Stampf touched her inappropriately. Moreover, although a plaintiff

asserting a claim of malicious prosecution "must also show that the prosecution was not otherwise supported by probable cause at the time it was commenced," *Capanelli*, 2009 WL 249358, at *9, the sole basis for Stampf's arrest was Trigg's statement. Finally, "malice may be inferred from the lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). If Trigg made a false statement to the police, it is likely she did so with the necessary malice. *See Capanelli*, 2009 WL 249358, at *10.

Accordingly, I find that plaintiff has raised triable issues of material fact in support of her malicious prosecution claim against Angela Trigg. For all these reasons, defendants' motion for summary judgment on the malicious prosecution claim is denied with respect to plaintiff's claim against Trigg and in all other respects granted.

### 2. Negligent and Intentional Infliction of Emotional Distress

In her sixth cause of action, Stampf brings a claim for intentional infliction of emotional distress arising from her arrest and prosecution. Am. Compl. ¶¶ 51-54. Although I originally understood her seventh cause of action, claiming negligent infliction of emotional distress, also to be based upon her arrest and prosecution, plaintiff's counsel stated during oral argument that the alleged negligent conduct that forms the basis of this claim is the "whole invocation of the criminal process from start to finish; that they [defendants] were negligent in the administration of that process throughout." Tr. at 21; *see also* Am. Compl. ¶¶ 56-60.

Plaintiff's claim for intentional infliction of emotional distress ("IIED") fails for a variety of reasons. To establish an IIED claim, a plaintiff must first demonstrate that defendant's conduct was extreme and outrageous. *Suarez v. Bakalchuk*, 66 A.D.3d 419 (1st Dep't 2009). In this case, the acts of the defendants in connection with plaintiffs' arrest do not amount to the type of outrageous conduct "beyond all possible bounds of decency" and "utterly intolerable in a

civilized community" as to be actionable.  *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293,

303 (1983); *Sylvester v. City of New York*, 23 Misc.3d 1139(A), at *5 (N.Y. Sup. Ct., N.Y.

County, June 4, 2009) ("The emotional distress plaintiffs experienced is inherent in any police

arrest and detention and does not sustain a claim of intentional infliction of emotional distress.").

Moreover, "public policy bars claims sounding in intentional infliction of emotional distress

against a governmental entity," such as defendant MTA or defendant LIRR.  *Wyllie v. District*

*Atty. of County of Kings*, 2 A.D.3d 714, 720 (2d Dep't 2003).  Additionally, a claim for IIED

based on false arrest and malicious prosecution is precluded by the fact that "the underlying

conduct is actionable under another theory of tort liability."  *Lewis v. U.S.*, 1999 WL 222611, at

*2 (W.D.N.Y. Mar. 26, 1999) (collecting cases); *see also Roper v. Hynes*, 2006 WL 2773032, at

*13 (S.D.N.Y. Sept. 27, 2006) (dismissing plaintiff's IIED claim based on her criminal

prosecution).  Finally, plaintiff's IIED claims against Sokira and Trigg based on the arrest on

August 3, 2006 are time-barred because plaintiff filed her complaint on August 13, 2007.  *See*

*Carlson v. Geneva City School Dist.*, 679 F. Supp. 2d 355, 370 (W.D.N.Y. 2010) (noting that

claims of intentional infliction of emotional distress are subject to a one-year statute of

limitations under New York law); *Hakim v. Hall*, 2009 WL 5910310, at *9 (S.D.N.Y. Oct. 23,

2009) (same).  For all these reasons, defendants are granted summary judgment on plaintiff's

sixth cause of action.

Similarly, Stampf's claim of negligent infliction of emotional distress ("NIED") fails for

several reasons.  First, "[n]egligent infliction of emotional distress is premised upon a breach of

duty which unreasonably endangers the plaintiff's physical safety."  *Sylvester*, 23 Misc.3d

1139(A), at *4.  Trigg, Sokira, and the MTA owed no duty to plaintiff and therefore should be

dismissed from this cause of action.  With respect to the LIRR, Stampf's employer owed her no

special duty to avoid causing her emotional distress.  *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989) (dismissing plaintiff's NIED claim against his employer arising out of an adverse employment action).  Moreover, to the extent her NIED claim is based on her arrest, Stampf cannot maintain such a claim because placing her under arrest was intentional and not negligent.  *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000) (rejecting a claim of negligent infliction of emotion distress on the ground that, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."); *Universal Calvary Church v. City of New York*, 2000 WL 1745048, at *12 (S.D.N.Y. Nov. 28, 2000) (noting that "once intentional conduct causing . . . injury has been established, the actor is liable for assault and battery and not negligence").  Indeed, plaintiff's pleading itself alleges intentional conduct as the basis for this claim of negligent infliction of emotional distress.  *See* Am. Compl. ¶ 60 (stating that the "acts, conduct and behavior of the defendants, [sic] were performed knowingly, intentionally and maliciously").  Finally, at oral argument, plaintiff's counsel asserted that Stampf's NIED claim is based on the defendants' "negligent administration of the criminal justice process."  Tr. at 21.  Plaintiff has not presented any evidence of the negligence of any defendant with respect to the "administration of the criminal justice process."  For all these reasons, plaintiff's seventh cause of action is dismissed.

   *3.  Discrimination*

   Stampf's final two causes of action allege that she was discriminated against by all defendants on the basis of her gender, race, and sexual orientation and are brought under N.Y. Exec. L. § 296 (the "state human rights law") and New York City Administrative Code § 8-101

*et seq.* (the "city human rights law").[9]   Stampf contends that two white, heterosexual men, who were also accused of inappropriate sexual conduct by Angela Trigg, were treated less harshly than she was.   More specifically, plaintiff alleges that the men were offered the opportunity to acknowledge their misconduct and in return received a five-day suspension, whereas Stampf was not offered the same opportunity and received a ten-day suspension.   Additionally, plaintiff contends that she was taken out of service without pay immediately after Trigg made her allegations, whereas the two men continued to work, even after admitting their guilt, until the LIRR formally disciplined them and their suspension began.

As an initial matter, although plaintiff brings these discrimination claims against all defendants, she fails to allege or present any evidence suggesting that Trigg, Sokira, or the MTA discriminated against Stampf.   Moreover, in her opposition to defendants' motion, plaintiff refers to *"defendant's"* (singular) discriminatory employment practices and thus appears to be referring to the LIRR only.   *See* Pl. Mem. 33.   Accordingly, the discrimination claims against Trigg, Sokira, and the MTA are dismissed.

To state a discrimination claim based on disparate treatment, a plaintiff must identify employees with "sufficiently similar [situations] to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."   *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).   The standards for liability under the state and city

---

[9] Defendants argue that plaintiff's claim under the New York City Human Rights Law should be dismissed for failure to comply with Section 8-502(c) of the New York City Administrative Code, which requires that a copy of any complaint brought pursuant to the city human rights law be served on the New York City Commission on Human Rights and Corporation Counsel.   Def. Mem. 24-25.   The overwhelming majority of courts, however, have found this provision not to be a condition precedent to filing suit but merely a mechanism for providing notice, and have refused to dismiss claims based upon a failure to comply with this subdivision.   *See, e.g.*, *Sales v. YM & YMHA of Washington Heights & Inwood*, 2003 WL 164276, at *8 (S.D.N.Y. Jan. 22, 2003); *Harrison v. Indosuez*, 6 F. Supp. 2d 224, 234 (S.D.N.Y. 1998); *Alvarez v. J.C. Penney Co., Inc.*, 1997 WL 104772, at *3 (E.D.N.Y. Feb. 14, 1997); *Teller v. Am. W. Airlines, Inc.*, 240 A.D.2d 727, (2d Dep't 1997); *Bernstein v. 1995 Assocs.*, 217 A.D.2d 512 (1st Dep't 1995); *but see McCormick v. Chase*, 2007 WL 2456444, at *2 (S.D.N.Y. Aug. 29, 2007) (directing plaintiff to provide proof of compliance with the provision upon pain of dismissal).   Accordingly, I decline to dismiss plaintiff's city human rights claim on this basis.

human rights laws are the same as those applicable to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 n.3 (2004). Disparate treatment claims are analyzed "under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*," 411 U.S. 792 (1973). *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Accordingly, to establish a prima facie case of disparate treatment under state and city laws, a plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination."[10] *Forrest*, 3 N.Y.3d at 305. The Second Circuit has emphasized that the burden of establishing a prima facie case of employment discrimination is minimal. *McGuinness*, 263 F.3d at 53 (collecting cases).

Plaintiff's showing with respect to the first three factors is not in serious contention. Defendants argue, however, that plaintiff has failed to establish circumstances giving rise to an inference of discrimination. Def. Mem. 22-23. More specifically, defendants argue that the two male employees identified by plaintiff received less severe disciplinary sanctions because they agreed to forego a trial and admitted their guilt. *Id*. Stampf, on the other hand, denied Trigg's allegations and was found guilty after an arbitration proceeding. In response, Stampf contends that she was never offered a five-day suspension in return for admitting misconduct. Pl. R.56.1 Counterstatement ¶ 128. At oral argument, and at least for purposes of the pending motions, defendants acknowledged that there is no evidence indicating that Stampf was offered the same opportunity as the two men to acknowledge her misconduct in return for a reduced sanction. Tr. at 46. In addition, and as noted above, Stampf contends that she was immediately taken out of

---

[10] When analyzing a federal claim of disparate treatment, the last factor is described as requiring a plaintiff to establish that a similarly situated employee not in the protected class received better treatment. *See McGuinness*, 263 F.3d at 53.

service once Trigg accused her, but that the men Trigg accused were allowed to continue working while the investigations of their conduct were pending.  In support of her claim, plaintiff proffers the disciplinary records of the two men, which do appear to indicate that they remained in service, with pay, until after they plead guilty.  Docket Entries 56-26 and 56-27 (sealed for confidentiality reasons).

In light of the evidence described above, I conclude that plaintiff has raised a genuine question of fact with respect to whether similarly situated employees not in her protected class received less harsh treatment.  By doing so, plaintiff has established a prima facie case of discrimination and thereby shifted the burden to defendant to provide a legitimate, non-discriminatory reason for the disparate treatment.  *Forrest*, 3 N.Y.3d at 305; *see also Demoret*, 451 F.3d at 151 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-04).  Defendants attempt to explain the disparity in treatment on the ground that the men accepted responsibility for their misconduct in return for a reduced sanction whereas plaintiff insisted on proceeding to trial. Defendants' argument misses the mark.  Plaintiff alleges – and defendants do not dispute – that she was never offered the opportunity to accept a reduced penalty in return for admitting misconduct.  Defendants have failed to offer any explanation as to why plaintiff was not afforded the same five-day suspension plea offer as the two men.  Nor do defendants offer any reason why plaintiff was taken out of service immediately after being accused while the two men were not.  I therefore conclude that defendants have failed to meet their burden, and that plaintiff's discrimination claims that she was immediately suspended without pay and that her penalty was a suspension of ten rather than five days may proceed.[11]

---

[11] If defendants had met their burden, then the burden would have shifted back to plaintiff to prove that defendants' proffered reason is false and that the real reason was discrimination.  *Forrest*, 3 N.Y.3d at 305; *see also Demoret*, 451 F.3d at 151 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-04).

In conclusion, summary judgment is granted in favor of defendants on all of plaintiffs' claims except for plaintiff's malicious prosecution claim against Trigg and her claims of disparate treatment under New York state and city human rights laws against the LIRR.

### F.   Plaintiff's Cross-Motion

Plaintiff has filed a cross-motion that seeks three forms of relief: 1) entry of a default judgment against Officer Sokira on the ground that he has never answered the complaint, 2) vacatur of the arbitration decision imposing discipline on Stampf, and 3) leave to amend her complaint should the court find any of her causes of action deficient.  For the reasons that follow, plaintiff's cross-motion is denied in its entirety.

#### 1.   Default Judgment against Sokira

Although Sokira has never answered the complaint, counsel for defendants contends that Sokira has never been properly served.  Plaintiff contends that she served Sokira pursuant to N.Y. C.P.L.R. 308(2).[12]  I see no reason to resolve the parties' dispute over service because, as discussed above, the undisputed evidence demonstrates that plaintiff is unable to sustain any viable claim against Sokira.  To require Sokira to answer the complaint, and then to move for summary judgment on the same grounds already articulated by counsel for the defendants who have appeared, would serve no useful purpose.  *See* FED. R. CIV. P. 1 (providing that the Federal Rules of Civil Procedure "be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding").

---

[12] Plaintiff also alleged service pursuant to Federal Rule of Civil Procedure 4(e)(2)(C), which permits service upon an individual by serving an agent authorized by appointment or law to accept service on behalf of the individual. Plaintiff has failed to identify any law that authorizes the MTA's general counsel to accept service on behalf of its employees.  Accordingly, I find that service was not effected on Sokira pursuant to this Federal Rule.

2.  *Vacatur of Disciplinary Arbitration*

In her notice of cross-motion, plaintiff seeks an order "Vacating the Arbital [sic] Award Pursuant to the Railway Labor Act, 45 USC § 151, et Seq." Docket Entry 53. In her memorandum of law in support of her motion, however, plaintiff does not address this aspect of her motion. Moreover, plaintiff's complaint fails to allege a cause of action under the Railway Labor Act. Accordingly, this aspect of plaintiff's cross-motion is denied.

3.  *Leave to Amend*

Finally, plaintiff seeks leave to amend her complaint if I find any of her causes of action deficiently pled. The only cause of action that is deficiently pled -- in fact, it is not pled at all -- is plaintiff's application for vacatur of the disciplinary arbitration decision pursuant to the Railway Labor Act. At this stage of the proceedings, now that discovery is closed, I decline to grant plaintiff's application for leave to amend to add this claim. Moreover, amendment would most likely be futile in light of the fact that "review of arbitral awards [under the Railway Labor Act] [i]s 'among the narrowest known to the law.'" *CSX Transp., Inc. v. United Transp. Union*, 950 F.2d 872, 877 (2d Cir. 1991) (quoting *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978)).

## Conclusion

For all the reasons discussed above, plaintiff's cross-motion is denied in its entirety.

Defendants' motion for summary judgment is granted in part and denied in part.  Specifically, because Stampf raises triable issues of fact with respect to her malicious prosecution claim against Trigg and her discrimination claims pursuant to state and city law against the LIRR, defendants' motion for summary judgment as to these claims is denied.  Defendants are granted summary judgment on all other claims.

**SO ORDERED.**


_____s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**


Dated:  Brooklyn, New York
        June 14, 2010


*U:\eoc 2010\stampf\m&o final rev smg.docx*