UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MELISSA STAMPF,                                   :
                                                  :
                              Plaintiff,          :          Memorandum
                                                  :          & Order
              -against-                           :          07-CV-3349 (SMG)
                                                  :
THE LONG ISLAND RAILROAD AUTHORITY and            :
ANGELA TRIGG,                                     :
                                                  :
                              Defendants.         :
------------------------------------------------------------------ x
GOLD, STEVEN M., U.S.M.J.:

        Plaintiff, Melissa Stampf, asserts a variety of claims in this action.  After trial, the jury

returned a verdict in plaintiff's favor on her claim for malicious prosecution against her former

co-worker, defendant Angela Trigg.  Stampf's claim is based on her allegation that Trigg falsely

told the police that Stampf improperly grabbed Trigg's breast, leading to Stampf's arrest and

prosecution.[1]  The jury awarded plaintiff $200,000 in compensatory damages for past emotional

distress, $100,000 in compensatory damages for future emotional distress, $30,000 in

compensatory economic damages, and $150,000 in punitive damages, for a total damages award

of $480,000.  Defendant Trigg now moves for judgment as a matter of law, a new trial, or

remittitur.  Def. Mem., Docket Entry 108.

## Discussion

A.      *Judgment as a Matter of Law*

        Trigg moves for judgment as a matter of law on Stampf's malicious prosecution claim

pursuant to Federal Rule of Civil Procedure 50(b).  Judgment as a matter of law may be granted

---

[1] The jury found in favor of defendant Long Island Railroad Authority ("LIRR" or the "Railroad") on plaintiff's
employment discrimination claim, the only additional claim that proceeded to trial.  Docket Entry 106.  Stampf's
other claims were dismissed on summary judgment in a decision that sets forth the underlying facts of this case in
detail.  *See* Memorandum & Order ("M&O"), Docket Entry 66.  I therefore presume familiarity with the facts and
do not repeat them at length here.

under Rule 50 only if "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998).

The elements of a malicious prosecution claim under New York law are "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). Trigg bases her motion on three grounds: (1) Stampf failed to establish that Trigg initiated a criminal proceeding against her, because (a) the issuance of a desk appearance ticket ("DAT") is not an initiation of a criminal proceeding and (b) even if issuance of a DAT commences a criminal proceeding, Trigg herself did not initiate the proceedings; (2) Stampf failed to establish that the criminal proceedings terminated in her favor; and (3) Stampf should be collaterally estopped from prevailing on her malicious prosecution claim in light of an arbitration award finding that Stampf improperly touched Trigg's breast. Def. Mem. 1. Each of defendant's arguments were raised previously in various motions, and I again reject them for substantially the same reasons.

Defendant first raised the argument that Trigg herself did not initiate the criminal proceedings in her motion for summary judgment, which I denied. Def. SJ Mem. 20-21, Docket Entry 44-12; M&O 19. The thrust of defendant's argument was that merely reporting a crime does not constitute initiating a criminal proceeding. As indicted in my decision, however, an individual who plays an active role in a prosecution, for example by encouraging the authorities to act, may be held liable for malicious prosecution. *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000). *See also Tadco Constr. Corp. v. Dormitory Auth. of the*

2

*State of New York*, 700 F. Supp. 2d 253, 270 (E.D.N.Y. 2010) (holding that providing false evidence to the police may support the first element of a malicious prosecution claim); *Brown v. Sears Roebuck & Co.*, 297 A.D.2d 205, 210 (1st Dep't 2002) (same).  Trigg's testimony at trial was that she told the police she had concern for her safety, causing the police to speak to and arrest Stampf.  Tr. 400.  This testimony provided the jury with a reasonable basis for finding that she encouraged the police to act.  Moreover, as a participant in the underlying interaction with Stampf, Trigg knew whether Stampf grabbed her breast or not, and thus lied to the police when she accused Stampf if in fact Stampf never grabbed her breast.  Stampf testified at trial that she did not grab Trigg's breast.  Tr. 81.  The jury's verdict indicates that the jurors believed Stampf's testimony that she did not grab Trigg's breast, and the jury's finding that Trigg deliberately lied to the police is itself sufficient to support a malicious prosecution claim.  *See Lupski v. County of Nassau,* 32 A.D.3d 997 (2d Dep't 2006) (holding that, while "[m]erely giving false information to the authorities does not constitute initiation of the proceeding," malicious prosecution may be established if there is "an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police").  Accordingly, this aspect of defendant's motion is denied.

In a letter motion seeking dismissal, Docket Entry 82, defendant argued that, as a matter of law, the issuance of a DAT does not commence a criminal proceeding and therefore may not form the basis of a malicious prosecution claim.  In support of her argument, Trigg relied upon *Puckowitz v. City of New York*, 2010 WL 3632692 (S.D.N.Y. Sept. 17, 2010), and *Garrett v. Port Authority of N.Y. & N.J.*, 2006 WL 2266298 (S.D.N.Y. Aug. 8, 2006).  I denied that motion as well.[2]  *See* Minute Entry for conference held on Dec. 2, 2010; Conf. held on Dec. 3, 2010 (no

---

[2] In a post-briefing letter, defendant cited a recent decision by a Nassau County court for the proposition that a DAT does not initiate criminal proceedings for purposes of a malicious prosecution claim.  Docket Entry 116 (citing

transcript available).  Although I did not issue a written decision, I relied upon, and quoted at length from, the decision in *Rosario v. Amalgamated Ladies' Garment Cutters' Union Local 10*, 605 F.2d 1228, 1249-50 (2d Cir. 1979).  After undertaking a detailed analysis of the issue, the Second Circuit concluded in *Rosario* that "if a New York court faced the question before us it would rule that the issuance of an Appearance Ticket commences a prosecution for purposes of determining whether an action for malicious prosecution lies."  *Id*. at 1250.

Although *Puckowitz* and *Garrett* seem to support defendant Trigg's position, they do not address the Second Circuit's decision in *Rosario* or explain why *Rosario* does not control here. Indeed, in its post-trial motion, defendant is forced to resort to the argument that *Rosario* was wrongly decided.  Def. Mem. 3.  Of course, whether or not that is so is not for this Court to decide.  Moreover, several other courts have followed *Rosario* and held that issuance of an appearance ticket provides a sufficient basis for a malicious prosecution claim.  *See, e.g., Tadco Constr. Corp.*, 700 F. Supp. 2d at 270 n.8; *Lopez v. City of New York*, 901 F. Supp. 684, 688 (S.D.N.Y. 1995); *Snead v. Aegis Sec., Inc.*, 105 A.D.2d 1059 (4th Dep't 1984).  *See also Allen v. Town of Colonie*, 182 A.D.2d 998 (3rd Dep't 1992) (reversing dismissal of malicious prosecution claim based on issuance of appearance ticket without discussing whether an appearance ticket is sufficient to trigger a malicious prosecution claim); N.Y. Pattern Jury Instructions—Civil 3:50 Comment (citing *Rosario* and *Snead* for the proposition that "[t]he issuance of an appearance ticket requiring a person to appear in a local criminal court (see CPL 150.10) is sufficient judicial activity for an action for malicious prosecution, even if an accusatory instrument is never filed"). In light of the clear Second Circuit authority supporting plaintiff's claim, this aspect of defendant's motion is denied as well.

---

*Levenson v. Nussbaum*, 2011 N.Y. Misc. LEXIS 1834 (Apr. 8, 2011)).  The court's statement that a DAT does not amount to a prosecution is arguably dicta, as plaintiff's claims were dismissed on other grounds, namely for failing to file a notice of claim.

In her final argument with respect to the elements of a malicious prosecution claim, defendant contends that plaintiff has failed to establish that the criminal proceedings were terminated in her favor. I rejected this argument when I denied defendant's motion for summary judgment. M&O 19-20. I review the issue again now in light of the evidence introduced at trial and the parties' submissions in connection with defendant's pending motion.

A form "declination of prosecution" was received in evidence during the trial. The form states in pertinent part that "[f]ollowing a review of the evidence and interviews with several witnesses, including the complaining witness, the People conclude that the case cannot be proven beyond a reasonable doubt. Consequently, the New York District Attorney's Office declines to prosecute this action at this time." Plaintiff's Trial Ex. 2, Docket Entry 108-4. Defendant argues that this declination did not constitute a favorable termination because it did not preclude the possibility that the charges could be renewed in the future.

Plaintiff, in support of her argument that the declination of prosecution constitutes a favorable termination, relies upon a provision in New York's Criminal Procedure Law stating that "a criminal action or proceeding against a person shall be considered terminated in favor of such person where . . . prior to the filing of an accusatory instrument in a local criminal court against such person, the prosecutor elects not to prosecute such person." Pl. Opp. 11, Docket Entry 109 (quoting N.Y. CRIM. PROC. LAW § 160.50(3)(i)). However, as defendant points out, Section 160.50(3) seems limited by its terms to defining favorable terminations for purposes of sealing records pursuant to Section 160.50(1). Def. Reply 9, Docket Entry 110. Indeed, an adjournment in contemplation of dismissal is defined as a favorable termination pursuant to Section 160.50(3)(b), yet well-settled case law establishes that it is not a favorable termination for purposes of a malicious prosecution claim. *See, e.g., Rothstein v. Carriere,* 373 F.3d 275,

287 (2d Cir. 2004).

Defendant cites supporting authority that, at least at first blush, seems to support her position.  Def. Mem. 10 (citing *Breytmen v. Olinville Realty, LLC*, 46 A.d.3d 484 (1ˢᵗ Dep't 2007) (holding that a prosecutor's request for dismissal on the grounds that the People could not meet their burden at trial did not indicate innocence and therefore could not support a malicious prosecution claim)).  However, New York courts have also held that even "[a] dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents 'the formal abandonment of the proceedings by the public prosecutor.'"  *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 197 (2000).  Courts have also held that "[a]n affirmative demonstration of innocence is not required.  What is required is a showing that the basis for dismissal was not inconsistent with innocence."  *Rivas v. Suffolk County,* 326 F. Supp. 2d 355, 363 (E.D.N.Y. 2004).

In *Verboys v. Town of Ramapo*, 12 A.D.3d 665 (2d Dep't 2004), the Court held that there was sufficient evidence to support a malicious prosecution claim where the charges against the plaintiff were dismissed without prejudice.  In reaching its decision, the Court in *Verboys* noted that the prosecution had conducted a full investigation and determined that the evidence was not sufficient to support the criminal charges.  The same is true here; the declination form indicates that the conclusion that the evidence of guilt was insufficient to support a prosecution was reached after the complaining witness, presumably Trigg, and others were interviewed.  Indeed, the prosecutor handling the criminal case against Stampf testified at trial that, at the time he prepared the declination of prosecution form, he had interviewed witnesses, determined the evidence was insufficient, and had no plans to continue investigating or prosecuting the case.  Tr. 830-31, 834-35.  Other courts have relied on *Verboys* to sustain malicious prosecution claims based upon criminal charges that were dismissed without prejudice.  *See, e.g., Landon v. County*

6

*of Orange*, 2009 WL 2191335, at *7 (S.D.N.Y. July 23, 2009) (finding a favorable termination where a prosecution was abandoned "under circumstances not inconsistent with [plaintiff's] innocence); *Rohrs v. Rohrs*, 17 A.D.3d 659 (2d Dep't 2005).  For all these reasons, this aspect of defendant's motion is denied as well.[3]

The final ground asserted by Trigg in support of her motion for judgment as a matter of law is that Stampf should be collaterally estopped from prevailing on her malicious prosecution claim in light of an arbitration award finding that Stampf improperly touched Trigg's breast. Defendant did not raise the arbitration award as a ground for her motion for judgment as a matter of law before the case was submitted to the jury, Tr. 844, and is therefore precluded from raising it now pursuant to Rule 50(b).  "Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."  FED. R. CIV. P. 50 advisory committee's 2006 note.  *See also AIG Global Secs. Lending Corp. v. Banc of Am. Secs., LLC*, 386 Fed. Appx. 5, 6 (2d Cir. 2010) ("[A motion to enter a judgment as a matter of law] may be renewed after an unfavorable verdict, but limited only to the grounds specifically raised in the prior motion for judgment as a matter of law; new grounds may not be added post-trial.").  Even if this ground could be raised, I would deny defendant's motion on the merits for the same reasons I previously stated in the Memorandum and Order I issued on November 16, 2010, Docket Entry 81, and on the record when I ruled on defendant's motion for reconsideration of my decision denying her motion for summary judgment, Tr. of 7/1/2010 at 4-8, Docket Entry 71.

For all these reasons, defendant's motion for judgment as a matter of law pursuant to Rule 50(b) is denied.

---

[3] An informative discussion of the ambiguity surrounding this element of a malicious prosecution claim may be found in *Lopez v. City of New York*, 901 F. Supp. 684, 688-90 (S.D.N.Y. 1995).

B.      *New Trial Pursuant to Rule 59*

Defendant next moves for a new trial pursuant to Federal Rule of Civil Procedure 59 on the ground that various evidentiary rulings were made in error.  Def. Mem. 11-18.  Defendant also seeks a new trial on the issue of damages, contending that the jury impermissibly awarded damages for Stampf's arrest as opposed to solely for her prosecution.  Def. Mem. 18-20.

A court "has significant discretion in deciding whether to grant a Rule 59 motion for a new trial." *Manganiello v. Agostini*, 2008 WL 5159776, at *8 (S.D.N.Y. Dec. 9, 2008) (citing *Amato v. City of Saratoga Springs*, 170 F.3d 311, 314 (2d Cir. 1999)).  Unlike a Rule 50 motion, which calls upon a court to view the evidence in the  light most favorable to the verdict winner, a court considering a Rule 59 motion "may independently weigh the evidence." *Id*.  Nonetheless, a court should not grant a new trial unless the "court determines that, in its independent judgment, the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation marks omitted).

A court may grant a motion pursuant to Rule 59 if "substantial errors were made in admitting evidence." *Katt v. City of New York*, 151 F. Supp. 2d 313, 352 (S.D.N.Y. 2001) (internal quotation marks omitted).  Here, defendant contends that the court erred a) in admitting evidence of Trigg's prior sexual behavior, b) in denying defendant's request to admit evidence of an arbitration award, and c) in prohibiting certain testimony from an Assistant District Attorney ("ADA").[4]  Def. Mem. 11-18.

---

[4] Defendant originally also alleged errors in admitting hearsay testimony, Def. Mem. 16, but withdrew this alleged error as a basis for her Rule 59 motion, Def. Reply 14-15.

1.      *New Trial on Liability*

    a.      *Evidence of Prior "Sexual" Behavior or Predisposition*

Defendant first argues that evidence of her prior sexual behavior and predisposition was admitted at trial in violation of Federal Rule of Evidence 412.  Defendant, however, was not a victim of alleged "sexual" misconduct as that term is typically used in the context of Rule 412, and the challenged evidence was not offered to prove Trigg's other sexual behavior or predisposition.  Moreover, the probative value of the evidence outweighed the danger of unfair prejudice; the evidence, which involved crude horseplay in a public setting, was not inflammatory and was relevant to the credibility of defendant Trigg's allegation that Stampf grabbed her breast.

The Congressional Discussion appended to the Advisory Committee's notes to Rule 412 indicates that the rule was adopted primarily to protect victims of rape and similar sexual assaults by barring evidence of a victim's sexual behavior or predisposition.  Trigg's allegation against Stampf described a physical contact entirely different from the sexual misconduct that typically invokes Rule 412.  As Trigg related in her reports to the police, she was sitting in the driver's seat of her car with a co-worker in the passenger seat.  Trigg alleged that plaintiff came up to the car, put her hand through the open driver's side window from outside of the car, grabbed Trigg's left breast and shook it.  Tr. 393, 397.  In her memorandum of law in support of the motions now pending before the Court, Trigg stresses that "nowhere in either of those statements [that she made to the police] did [she] say, or even imply, that Stampf grabbed her breast for the purpose of degrading or abusing her, or for the purpose of satisfying Stampf's sexual desire."  Def. Mem. 8.  I therefore conclude that this is not a case "involving sexual misconduct" within the scope of

Rule 412.[5]

Furthermore, the challenged evidence was not offered as proof of Trigg's sexual behavior or predisposition.  Trigg raised her Rule 412 objection prior to trial in anticipation of testimony that a co-worker, Glenis Holland, saw her "slap a male conductor on the behind."  Docket Entry 94.  At trial, Trigg also objected under Rule 412 to testimony from another co-worker, Matt Schrader, that there was a "locker room" atmosphere at the LIRR, and that while at work Trigg made "cat calls" directed to him, patted his buttocks, rubbed his shoulders and chest, and rubbed her breasts against him.  Tr. 251-54.  As discussed in greater detail below, this evidence was admitted in part to show Trigg's attitude toward crude horseplay in the workplace, which bore upon the credibility of her allegation against Stampf.  There was no contention in this case that Trigg, by virtue of any prior sexual behavior or otherwise, encouraged Stampf to grab her breast or consented to it; to the contrary, Stampf flatly denied touching Trigg's breast.  Tr. 81.  Indeed, when I framed the issues for the jury in my charge, I stated that "Melissa Stampf alleges that Miss Trigg made a false accusation to the police, resulting in Miss Stampf's arrest.  The defendant Miss Trigg . . . denies these allegations and alleges that her statements to the police were truthful."  Tr. 951.  Thus, the fundamental issue at the trial of this case was whether or not Stampf grabbed Trigg's breast under any circumstances and, if not, what injury Stampf suffered as a result of being prosecuted based on Trigg's false allegation.

Even if I had concluded during trial that this case involved alleged sexual misconduct

---

[5] The Advisory Committee note emphasizes that Rule 412 applies only to evidence concerning alleged victims of sexual misconduct.

> Rule 412 does not . . . apply unless the person against whom the evidence is offered can reasonably be characterized as a "victim of alleged sexual misconduct."  When this is not the case, as for instance in a defamation action involving statements concerning sexual misconduct in which the evidence is offered to show that the alleged defamatory statements were true or did not damage the plaintiff's reputation, neither Rule 404 nor this rule will operate to bar the evidence.  . . .  Evidence offered to prove allegedly false prior claims by the victim is not barred by Rule 412.

FED. R. EVID. 412 advisory committee's 1994 note.

10

within the scope of Rule 412, I would have admitted the evidence pursuant to Rule 412(b)(2) because its probative value substantially outweighed the danger of harm or prejudice to Trigg. The evidence of Trigg's interactions with her co-workers was relevant to Trigg's credibility, not because it suggested anything about her sexual behavior or predisposition, but because of what it indicated about how she reacted to crude "locker room" behavior at the workplace.  If, as Schrader testified, Trigg was a participant in crude horseplay at work, and if Stampf did jokingly grab her breast, a reasonable juror could conclude that it would be less likely that Trigg would have taken offense and decided to report Stampf's conduct to the police.  Thus, evidence of how Trigg typically reacted to actual horseplay in the workplace could be useful to a jury deciding whether to believe Stampf's testimony that she did not grab Trigg's breast and that Trigg fabricated the allegation out of malice, or Trigg's testimony that Stampf did grab her breast.[6]

In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998), the Supreme Court recognized the relevance of the context and workplace environment in a sexual harassment claim, citing as an example a professional football player's working environment where "the coach smacks him on the buttocks as he heads onto the field," even though "the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office."  Other courts have similarly recognized that evidence of a victim's sexual horseplay or speech at the workplace may be admissible in a hostile work environment claim to establish that the victim was not offended.  *See*, *e.g.*, *Seybert v. Int'l Group, Inc.*, 2009 WL 3297304, at

---

[6] After the evidence concerning Schrader was received, I instructed the jury that

> any romantic or sexual activity by coworkers with each other is irrelevant to this case.  I have admitted certain testimony so that you could understand the atmosphere among coworkers who did not have sexual designs upon each other or sexual desires for each other or were interacting in a way that was intended as a sexual overture towards each other, but rather that help you understand and analyze the claim in the case about what was regular contact between coworkers that was not intended in a sexual way.

Tr. 311.  I subsequently invited defendant's counsel to propose an additional instruction, but he declined to do so, stating that he found my instruction adequate.  Tr. 342.

*4-6 (E.D. Pa. Oct. 14, 2009); *E.E.O.C. v. Winning Team, Inc.*, 2009 WL 805127, at *2-3

(W.D.N.C. Mar. 27, 2009); *E.E.O.C. v. Smokin' Joe's Tobacco Shop, Inc.*, 2007 WL 2461745, at

*1-2 (E.D. Pa. Aug. 22, 2007); *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 680

(S.D.N.Y. 2001); *Holt v. Welch Allyn, Inc.*, 2000 WL 98118, at *1-2 (N.D.N.Y. Jan. 11, 2000);

*Beard v. Flying J. Inc.*, 116 F. Supp. 2d 1077, 1085-86 (S.D. Iowa 2000). *Cf. Meritor Sav. Bank,*

*FSB v. Vinson*, 477 U.S. 57, 69 (1986) (recognizing that a "complainant's sexually provocative

speech or dress" is "obviously relevant" in sexual harassment cases); *Myer-Dupuis v. Thomson*

*Newspapers, Inc.*, 134 F.3d 371 (6th Cir. 1997). Thus, in the sexual harassment context, courts

have held that "a plaintiff's sexual conduct at work is relevant to the issue of whether she was

offended when others engaged in similar conduct at work." *Smokin' Joe's Tobacco Shop, Inc.*,

2007 WL 2461745, at *1. Although the context is different, the same is true here. Trigg's

conduct at work was relevant to whether she would have been so offended if Stampf grabbed her

breast in the manner she claimed that she would have reported Stampf's conduct to the police.

Moreover, the challenged evidenced was not significantly prejudicial. As pointed out in

*Wilson v. City of Des Moines*, 442 F.3d 637 (8th Cir. 2006),

> Rule 412 "aims to safeguard the alleged victim against the invasion of
> privacy, potential embarrassment and sexual stereotyping that is
> associated with public disclosure of intimate sexual details." The
> evidence of Wilson's sexual comments and behavior in the workplace
> does not raise such concerns. Wilson had no intention to hide this
> behavior from others, for the comments and behavior at issue were
> conducted in public. Its probative value substantially outweighed any
> unfair prejudice that it might have produced.

*Id*. at 643-44 (quoting FED. R. EVID. 412 advisory committee's 1994 note). The same is true of

the challenged evidence concerning Trigg in this case. There was no "disclosure of intimate

sexual details" about Trigg; the evidence involved Trigg's public, workplace behavior. Thus,

Rule 412's concerns for privacy and embarrassment were not implicated by the evidence

presented in this case.

Trigg also points out that plaintiff failed to file a motion seeking leave to admit evidence of sexual behavior as required by Rule 412(c).  Of course, plaintiff was obliged to bring a motion pursuant to Rule 412(c) only if Rule 412 applied to the challenged evidence.  Even if Rule 412 did apply, defendant's argument would be one of form rather than substance.  *See Wilson*, 442 F.3d at 644.  Plaintiff signaled her intention to rely on the evidence now challenged by defendant by presenting that evidence in the Statement of Facts she submitted pursuant to Local Civil Rule 56.1 in opposition to defendant's summary judgment motion.  Docket Entry 49-2, ¶¶ 94-95, 115. Moreover, plaintiff submitted a witness and exhibit list more than two weeks prior to trial that identified Holland and Schrader as witnesses.  Docket Entry 80.  Thus, Trigg had ample notice of the evidence plaintiff intended to introduce at trial.

For all these reasons, I find no error pursuant to Rule 412 as a result of admitting the challenged testimony.

### b.    *Evidence of Arbitration Award*

Defendant next contends that it was error not to receive in evidence an arbitrator's finding that Stampf had improperly touched Trigg's breast.  Trigg moved in limine prior to trial for admission of the arbitrator's finding.  Docket Entry 72.  I denied the motion and set forth the reasons for my decision in a Memorandum and Order.  Docket Entry 81.  Defendant Trigg now renews her argument that the arbitrator's award should have been received in evidence.  Def. Mem. 23.  This aspect of Trigg's motion is denied for the reasons stated in my previous Memorandum & Order on the motion in limine.  Moreover, the leading cases relied upon by defendant in support of its motion in limine considered the admissibility of an arbitration award in the context of employment discrimination litigation.  *See, e.g., Alexander v. Gardner-Denver*

13

*Co.*, 415 U.S. 36, 60 (1974).  As indicated in my Memorandum and Order, arbitration decisions are sometimes admitted in employment discrimination cases as evidence that an employer took an adverse action for a reason other than discrimination.  Docket Entry 81 at 2.  Here, the jury imposed liability on defendant Trigg for malicious prosecution.  Thus, the rationale for admitting an arbitration decision does not apply in this case.  Trigg's motion with respect to the arbitration decision is therefore denied.

> c.    *Testimony of ADA Kern*

As discussed above, the criminal charge against plaintiff was dismissed when the prosecutor filed a declination of prosecution form.  The Assistant District Attorney responsible for the case, Kenn Kern, testified at trial.  Defendant contends that I should have permitted ADA Kern to testify whether a declination of prosecution indicates that a defendant is innocent.  Def. Mem. 17 (citing Tr. 828-29, 849).

ADA Kern had no specific recollection of Stampf's criminal case.  Tr. 820, 828, 837-38. Thus, Kern could only have testified about what a declination of prosecution signifies as a general matter.  Such testimony would have entailed specialized knowledge Kern acquired by virtue of his education, training and experience.  *See* FED. R. EVID. 702.  However, defendant never disclosed Kern as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2), and this aspect of his testimony was properly excluded on this basis alone.  In any event, the issue with respect to which defendant sought to offer the testimony – whether Stampf's criminal prosecution was terminated in her favor – is, at least under the circumstances presented here, a question of law, and not within the province of the jury.  *See Loeb v. Teitelbaum*, 77 A.D.2d 92, 98 (2d Dep't 1980) (stating that "in the absence of a factual dispute relative to the circumstances of the dismissal, favorable termination is a question for the court, although it becomes one for the

jury if there is a factual controversy") (citing Restatement, Torts 2d, § 673). *See also Rohrs*, 17 A.D.3d at 660. No factual controversy was raised at trial; it is undisputed that the prosecution against Stampf was declined because, "[f]ollowing a review of the evidence and interviews with several witnesses, including the complaining witness, the People conclude[d] that the case cannot be proven beyond a reasonable doubt." Docket Entry 56-1. For the reasons stated previously, I conclude as a matter of law that the declination of prosecution in Stampf's case was a termination of criminal proceedings in favor of Stampf sufficient to establish the second element of a malicious prosecution claim. The ADA's testimony about whether a declination of prosecution indicates that a defendant is innocent was irrelevant to the jury, and it was not error to exclude it.

After reviewing the record and case law, I find defendant's contentions of evidentiary errors are without merit. Accordingly, Trigg's motion for a new trial on liability is denied.

   2.      *New Trial on Damages*

Trigg also moves for a new trial on damages, alleging that the jury improperly awarded Stampf damages for her arrest, not just her prosecution, and arguing that the jury charge failed to advise the jury of the demarcation.[7] Def. Mem. 18. In her proposed charge, defendant specifically requested that the jury be charged that the damages for a malicious prosecution claim cover the time period from arraignment through the end of the criminal proceedings. Docket Entry 87 at 5. At the trial, I followed the New York Pattern Jury Instructions and charged the jurors as follows:

> If you find for the plaintiff on the malicious prosecution claim, she will be entitled to recover from the defendant Trigg for the actual damages resulting from the criminal prosecution. You will award Ms. Stampf such an amount as, in the exercise of your good judgment and common sense, you find is fair and just compensation for any damage to plaintiff's

---

[7] Plaintiff's false arrest claim was dismissed prior to trial as time-barred. M&O 17.

> reputation, humiliation, and mental anguish that may have been caused by the criminal prosecution, and any other injury and inconvenience to the plaintiff caused by her prosecution, and any expenses incurred by the plaintiff in defending the criminal prosecution.  As I have just explained with respect to plaintiff's discrimination claim, you may award actual damages only for those mental and emotional injuries Ms. Stampf has suffered or will continue to suffer that she has proven by a preponderance of the evidence to have been proximately caused by defendant Trigg's malicious prosecution.

Tr. 961-62.  *See also* N.Y. Pattern Jury Instructions—Civil 3:50.  Thus, the charge made no mention of damages related specifically to Stampf's arrest.  The jury is presumed to have followed the court's instructions.  *See U.S. v. Pforzheimer*, 826 F.2d 200, 205 (2d Cir. 1987) (stating that "[i]t is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge").

Moreover, even if the jury did award damages flowing from Stampf's arrest, there was no error.  New York courts recognize that damages for malicious prosecution may include compensation for injuries beginning from the time of arrest and imprisonment because the impact "upon the feelings, reputation and character by a false accusation as well as that caused by arrest and imprisonment . . . is in many cases the gravamen of the action."  *Halberstadt v. New York Life Ins. Co.*, 194 N.Y. 1, 8 (1909) (internal quotation mark omitted).  *See also Kinge v. State*, 79 A.D.3d 1473, 1481 (3d Dep't 2010); *Putnam v. County of Steuben*, 61 A.D.3d 1369, 1372 (4th Dep't 2009); *Burlett v. Saratoga County*, 111 A.D.2d 426, 427 (3d Dep't 1985) (recognizing that damages in a malicious prosecution action include all injuries that are "the direct, natural and proximate results of the criminal prosecution, including those for suffering arrest and imprisonment").[8]  Finally, although Stampf's arrest took place outside the relevant

---

[8] Defendant relies primarily upon *Bryant v. Crowe*, 697 F. Supp. 2d 482, 490 (S.D.N.Y. 2010), to support her contention that damages for an unlawful arrest are not recoverable in a claim for malicious prosecution.  However, the holding in *Bryant* is expressly limited to cases in which both false arrest and malicious prosecution claims are tried.  Here, as noted above, plaintiff's false arrest claim was dismissed prior to trial.

16

limitations period, the humiliation and distress she described as a result of her arrest continued

into the period for which damages were properly awarded.  Accordingly, defendant's motion for

a new trial on damages is denied.

C.    *Remittitur*

In the alternative to a new trial on damages, defendant seeks remittitur on each of the

awards – compensatory (past and future) emotional damages, compensatory economic damages,

and punitive damages – arguing that each is excessive.  Def. Mem. 20-26.  "Remittitur is the

process by which a court compels a plaintiff to choose between reduction of an excessive verdict

and a new trial."  *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984).

On a Rule 59 motion in a diversity action, such as this one, "[t]he role of the district court

is to determine whether the jury's verdict is within the confines set by state law, and to

determine, by reference to federal standards developed under Rule 59, whether a new trial or

remittitur should be ordered."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 435 (1996)

(quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)).

Thus, a federal court considering a claim that a jury has awarded excessive damages on a New

York state law claim must apply New York law.  *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d

Cir. 2006).

Under New York law, a court reviewing a jury award "shall determine that an award is

excessive or inadequate if it deviates materially from what would be reasonable compensation."

N.Y. C.P.L.R. 5501(c).  In the federal system, responsibility for deciding whether a jury's verdict

deviates materially from reasonable compensation rests in the first instance with the district

court.  *Gasperini*, 518 U.S. at 438.  To make this determination, a court considers awards

approved in comparable cases.  *Id.* at 425.  However, "the standard under § 5501(c) is not

whether an award deviates *at all* from past awards – it is whether an award deviates *materially* from *reasonable compensation*." *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010) (quoting *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 439 (S.D.N.Y. 2008)).  Thus, "[p]rior awards are regarded as instructive, but not binding."  *Okraynets*, 555 F. Supp. 2d at 436. Moreover, a court reviewing a verdict must bear in mind that "[j]urors are uniquely positioned to assess the evidence presented at trial and assign a monetary value to the plaintiff's non-economic damages."  *Cantu*, 705 F. Supp. 2d at 227.  For that reason, and "because the amount of damages to be awarded is primarily a question of fact for the jury, a court should exercise its discretionary remittitur power sparingly."  *Okraynets*, 555 F. Supp. 2d at 436.  *See also Lolik v. Big V Supermarkets, Inc.,* 266 A.D.2d 759 (3d Dep't 1999) (noting that the "assessment of damages . . . is primarily a factual determination to be made by the jury, and is accorded great deference").

Here, as noted above, the jury awarded plaintiff $200,000 in compensatory damages for past emotional distress, $100,000 for future emotional distress, $30,000 in economic damages, and $150,000 in punitive damages.  I analyze each aspect of the jury's award pursuant to the standard set forth in New York's CPLR separately below.

    *1.     Emotional Damages*

Although her time in custody was relatively short and her criminal case required only one court appearance, the evidence at trial supported a finding that plaintiff suffered more than mere "garden-variety" emotional distress.  Plaintiff had been employed by the Long Island Railroad for approximately fourteen years at the time she was arrested.  Tr. 68.  Police officers approached her at work, cuffed her and walked her through an overpass to a police car.  Tr. 96-97.  Co-workers -- including but not limited to her accuser, the defendant -- saw her as she was escorted by the police, in cuffs, and placed into the police car.  Tr. 97-98.  Once the police car

arrived at the police station, Stampf, still in custody and with the handcuffs restraining her

visible, was escorted through an area where she saw additional co-workers as well as

supervisors.  Tr. 99-100.  The evidence presented at trial indicated that Stampf's arrest became

the subject of gossip and was common knowledge among Long Island Railroad employees

within a week.  Tr. 385-86.

Once at the police station, plaintiff was cuffed to a bench, patted down, and told she was

being charged with sexual assault.  Tr. 101-02.  Plaintiff was then fingerprinted, photographed

and held in a locked cell for approximately five hours.  Tr. 103-04.  Stampf testified that this

experience left her feeling "ashamed and mortified" and "like a criminal."  Tr. 102.

Upon her release from custody, plaintiff was issued a desk appearance ticket charging her

with forcible touching and directing her to appear in court.  Tr. 104-05.  Facing criminal charges,

plaintiff proceeded to hire an attorney.  To raise the money for attorney's fees, plaintiff was

forced to borrow from her father, who in turn had to obtain a second mortgage on his home to

secure the necessary funds.  Tr. 110.  Plaintiff has been making the payments on the second

mortgage obtained by her father.  Tr. 111.

The charges remained pending and hanging over plaintiff's head from the date of her

arrest in early August, 2006 until December of that year, when the declination of prosecution

form discussed above was filed.  Pl. Trial Ex. 2.  Plaintiff faced not only criminal charges but

also a disciplinary action brought against her by the Railroad.  Tr. 119.  Because her criminal

case was still pending when the hearing on the disciplinary charges was held, Stampf's criminal

defense attorney advised her to invoke her Fifth Amendment right to remain silent at the

disciplinary proceeding.  Tr. 119.  Plaintiff was found guilty of a disciplinary violation and

ultimately taken out of service for ten days.  Tr. 120.

At the time of her arrest, plaintiff was in a committed relationship with another woman, Cathleen Bracken.  Plaintiff and Bracken purchased a home together and each made efforts to conceive a child that they hoped to raise together.  Tr. 121-22.  Both plaintiff and Bracken testified during the trial about the effect of plaintiff's arrest on their relationship.  According to their testimony, plaintiff's arrest and prosecution took a toll on their relationship for several reasons.  Once plaintiff became responsible for paying her father's second mortgage, she was unable to contribute as much to the household expenses as before.  Tr. 123.  In addition, according to Bracken, the arrest and prosecution left plaintiff "highly anxious" and "constantly worried," particularly about paying back the money she had borrowed and about having been paraded in front of her co-workers in handcuffs.  Tr. 381.  Bracken explained Stampf's high level of anxiety as follows:  "Every day you got to work and every day there are people looking at you like you did something terrible.  And here, the railroad said yeah, you did something terrible, that is why you are being punished for it."  Tr. 382.

As a result of the stress and anxiety caused by her criminal case, plaintiff became withdrawn and began drinking excessively.  Tr. 123-24; 382.  Plaintiff sought therapy after her arrest and required prescription medication to help her sleep.  Tr. 125, 144.  In an effort to control her drinking, Stampf attended meetings of Alcoholics Anonymous.  Tr. 126.  Plaintiff and Bracken attended couples counseling, but their relationship did not survive the strains caused by the criminal prosecution.  Tr. 123, 127, 363, 381, 384.  It was clear from Stampf's demeanor at trial that she continues to be troubled by the events surrounding her arrest and prosecution.

A number of courts have approved awards in excess of $100,000 as reasonable compensation under New York law for straight-forward "garden-variety" emotional distress damages.  *See*, *e.g.*, *Patterson*, 440 F.3d at 120 (affirming an award of $100,000 in emotional

20

distress damages where testimony established plaintiff suffered "humiliation, embarrassment, and loss of self-confidence, . . . sleeplessness, headaches, stomach pains, and burning in his eyes from the use of mace"); *Wallace v. Suffolk County Police Dep't*, 2010 WL 3835882, at *8-10 (E.D.N.Y. Sept. 24, 2010) (declining to reduce an award of $200,000 for "garden-variety" emotional damages where "[p]laintiff testified that he experienced sleeplessness, anger, difficulty with his personal and family relationships, stress, tension, and emotional trauma," and citing cases supporting such an award); *Strader v. Ashley*, 61 A.D.3d 1244, 1247 (3d Dep't 2009) (affirming that an award of $250,000 for malicious prosecution does not deviate materially from what is reasonable compensation where "plaintiff testified that he suffered emotional and physical harm – including feeling anxious and worried about his reputation in the community, feeling sick to his stomach, difficulty sleeping and eating and losing weight – and that he stopped socializing for fear of public scorn"); *Morsette v. "The Final Call,"* 309 A.D.2d 249, 251, 257 (1st Dep't 2003) (affirming an award of $100,000 for past emotional distress, and reducing an award of future damages from $500,000 to $300,000, in a libel case where plaintiff "became depressed, anxious, embarrassed to be around others and reclusive, which had the effect of causing her to gain approximately 50 pounds and severely undermined her ability to function socially and professionally").

As defendant points out, other decisions have held that reasonable compensation for malicious prosecution where only "garden-variety" injuries are established should not exceed $25,000. Def. Mem. 21-22 (citing, among other cases, *Rivera v. City of New York*, 40 A.D.3d 334 (1st Dep't 2008); *Parkin v. Cornell Univ.*, 182 A.D.2d 850 (3d Dep't 1992)). In some of the cases cited by defendant, however, there is little discussion of the plaintiff's actual injuries, making it difficult to assess whether the damages awarded in those cases are appropriately used

21

for comparison purposes here.  *See*, *e.g.*, *Rohrs*, 17 A.D.3d at 659; *Lynch v. County of Nassau*, 278 A.D.2d 205, 206 (2d Dep't 2000).  In those cases where the evidence of injuries sustained is discussed, that evidence is less compelling than the showing made by Stampf here.  For example, in *Rivera*, the court stressed that "[t]here was no objective evidence produced at trial to establish any damages sustained or additional expenses incurred as a result of [plaintiffs'] prosecution . . . other than inconvenience."  40 A.D.3d at 340.  Other cases cited by defendant are distinguishable as well.  For example, defendant focuses on the minimal amount of time Stampf spent in custody as justification for a significantly reduced award and cites cases awarding damages of under $25,000 for false arrest or imprisonment.  Def. Mem. 22 (citing *Gutierrez v. City of New York*, 288 A.D.2d 86 (1st Dep't 2001) (minimal damages awarded for false arrest where jury found in defendant's favor on malicious prosecution claim); *Woodard v. City of New York*, 81 A.D.2d 947 (3d Dep't 1981) (same); *Landow v. Town of Amherst*, 49 A.D.3d 1236 (4th Dep't 2008) (awarding $10,000 for false arrest leading to 28 to 32 hours of pre-arraignment incarceration)).  As discussed above, however, Stampf's damages arise from the substantial impact her arrest had on her after her release from custody.

The Second Circuit has noted that "New York cases vary widely in the amount of damages awarded for mental anguish," including many that "reduce awards to $30,000 or below, . . . [while] other cases uphold awards of more than $100,000 without discussion of protracted suffering, truly egregious conduct, or medical treatment."  *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 78 (2d Cir. 2004) (affirming trial court's reduction of emotional damages award to $125,000 for plaintiffs who testified that they experienced "shock, nightmares, sleeplessness, humiliation, and other subjective distress"), *vacated on other grounds sub nom KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005).

22

The evidence before the jury indicated that plaintiff's arrest led her to drink excessively and seek help through Alcoholics Anonymous. The evidence further established that plaintiff required prescription medication to help her sleep and underwent therapy and couples counseling. Despite her efforts, plaintiff could not overcome the strains that her arrest put upon her relationship with Bracken, which ended as a result. Thus, plaintiff's injuries were greater than "garden-variety" emotional distress. Even if her damages were of the mere "garden-variety" emotional distress type, however, an award of $200,000 is within the vast range of awards in comparable cases. Thus, I conclude that the jury's award of $200,000 for past emotional distress is "reasonable compensation" under New York law for her injuries.

Defendant also contends that the $100,000 award for future pain and suffering was excessive because plaintiff failed to establish any future emotional damages. Def. Mem. 22. As noted above, plaintiff testified that the malicious prosecution had long-lasting effects, including the break-up of a committed relationship and problems with alcohol. Moreover, plaintiff continues to work for the Railroad and thus no doubt still interacts with co-workers who saw or heard about her arrest. Thus, I find the jury's award of $100,000 for future pain and suffering, which amounts to half of the damages the jury awarded for her past pain and suffering, to be reasonable compensation. *See Boodram v. Brooklyn Developmental Ctr.*, 2 Misc.3d 574, 773 N.Y.S.2d 817 (N.Y. Sup. 2003) (affirming jury's award of future emotional damages in same amount as jury's award for past emotional damages). For all these reasons, defendant's motion for remittitur of the jury's emotional damages award is denied.

2.    *Economic Damages*

Although defendant contends that the jury's $30,000 economic damages award is excessive, Def. Mem. 23, this argument is without merit. Stampf testified that her criminal

defense lawyer charged her $25,000 and that she was able to pay the attorney's fee only by asking her father to take out a second mortgage on his home. Tr. 110. The checks plaintiff used to pay the $25,000 attorney's fee were received in evidence at trial. Tr. 113-14. Stampf further testified that she makes the payments on the second mortgage taken out by her father to generate the $25,000. Tr. 111. Thus, an award of $30,000 is not unreasonable, as the jury undoubtedly awarded interest in addition to the principal amount of the attorney's fee.

### 3.   Punitive Damages

In examining whether a punitive damages award is excessive, Constitutional due process concerns must be considered. The Supreme Court has outlined three factors to be taken into account when determining whether a punitive award exceeds the limits of due process: 1) the degree of reprehensibility of the defendant's conduct, 2) the disparity between the punitive damages award and the harm caused to plaintiff, and 3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases."[9] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (stating that "punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence"). The Supreme Court has upheld punitive damage awards of more than four times the amount of compensable damages, stating that "[s]ingle digit multipliers are more likely to comport with due process" than larger ones. *State Farm*, 538 U.S. at 425. *See also Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 8 Misc. 3d 394, 404 (Sup. Ct., New York County, 2005) (recognizing that a 10:1 ratio (a punitive award

---

[9] The third factor is not relevant in this case as New York has no civil penalty for filing a false police report. The penal law provides that filing a false police report is a Class A misdemeanor. N.Y. PENAL L. § 240.50. *See also Armatas v. Maroulleti*, 2010 WL 4340437, at *18 (E.D.N.Y. Oct. 19, 2010) (finding no private right of action for a violation of N.Y. Penal Law § 240.50).

of ten times the compensatory award) is the "upper limit" that due process allows).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. Particularly reprehensible conduct includes acts of malice, trickery or deceit. *Id*. at 575-76; *Patterson*, 440 F.3d at 121. In this case, the jury found that Trigg acted with malice when it held her liable for malicious prosecution. *See Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978) (recognizing that a finding of malice that establishes a malicious prosecution claim supports an award of punitive damages).

With respect to the ratio between punitive and compensatory damages, the jury in Stampf's case awarded her $150,000 in punitive damages, or less than half of the $330,000 in compensatory damages awarded. The punitive damages award is a "fraction of the compensable damages, rather than a multiple thereof, and thus [it is] not disproportionately large by comparison." *Patterson*, 440 F.3d at 121**.**

Finally, "[w]hether to award punitive damages in a particular case, as well as the amount of such damages, if any, are primarily questions which reside in the sound discretion of the original trier of the facts." *Nardelli*, 44 N.Y.2d at 503. Moreover, the amount of punitive damages awarded by a jury "should not be reduced by a court unless it is so grossly excessive as to show by its very exorbitancy that it was actuated by passion." *Id*. (internal quotation marks omitted). In this case, the jury's award of punitive damages in the amount of $150,000 was not "so grossly excessive" as to suggest the jurors let their passions rule. For these reasons, I do not find that the jury's punitive damages award is so excessive that remittitur is warranted.[10] *See*

---

[10] Defendant also argues that her earnings and lack of wealth should be considered in determining an appropriate punitive damages award. Def. Mem. 25. I reject this argument for two reasons. First, the Long Island Railroad and not Trigg will be paying the award, so Trigg's personal wealth is not pertinent. *See* Docket Entry 114 (stating that the Railroad has agreed to pay any judgment against Trigg). Second, "the defendant's financial status has occupied

25

*Strader*, 61 A.D.3d at 1248 (affirming jury's award of slightly more than $100,000 punitive damages award on a malicious prosecution claim).

### Conclusion

For all the reasons discussed above, defendant's motion is denied in its entirety.  The judgment stands without modification.  The stay on the enforcement of the judgment is hereby lifted.

**SO ORDERED.**

_____/s/_____
**STEVEN M. GOLD**
United States Magistrate Judge

Dated: Brooklyn, New York
July 28, 2011

*U:\eoc 2011\stampf\post-trial m&o v smg final.docx*

---

no place in the Supreme Court's due process review" of punitive damage awards.  *Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 85 (2d Cir. 2007).  *But see Patterson*, 440 F.3d at 121-22 (recognizing that a defendant's financial situation is relevant in light of the deterrent purpose of a punitive damages award).